**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONVERSE INC., and NIKE, INC., <br><br>               Plaintiffs, <br><br>       v. <br><br> LOVE, KELLY HOLDINGS LLC, <br><br>               Defendant. | Case No. <br><br> **COMPLAINT FOR DECLARATORY RELIEF** <br><br> **JURY TRIAL REQUESTED** |

Plaintiffs Converse Inc. ("Converse") and Nike, Inc. ("Nike" and together with Converse, "Plaintiffs") hereby commence this action and seek a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* that Converse's good faith use of "DEAR ___," and "LOVE, ___" in connection with its "Love, Chuck" marketing campaign and Nike's good faith use of "LOVE, HURTS." in connection with its "Love, Hurts." marketing campaign and apparel do not infringe Defendant Love, Kelly Holdings LLC's ("Love, Kelly" or "Defendant") purported trademark rights in the LOVE, KELLY and DEAR LOVE, terms.  To this end, Plaintiffs allege as follows:

## <u>INTRODUCTION</u>

1.      Plaintiffs file this action because of Defendant's baseless accusations of willful trademark infringement against them and Defendant's aggressive social media campaign broadcasting the same unfounded claims.

2.      Nike and Converse are leading brands with world class marketing departments that strive to develop advertising campaigns that meaningfully connect with their consumers.  To do so, Plaintiffs work with talent from the highest levels of sport and entertainment, develop inspiring storylines to drive their marketing campaigns, and produce advertisements of the highest standard and quality.  Plaintiffs' marketing efforts are highly regarded and often awarded.  Some recent

examples include: Nike's 2025 Super Clio Award for most creative commercial in the Big Game[1] and numerous awards from The One Show in 2025 in categories of writing and craft.[2]

3.  In late 2024, members of Converse's global brand marketing team sought to develop a marketing campaign that would ignite consumers' emotional connection to the brand through their love of iconic Converse products.  As part of these efforts, Converse looked back at its past marketing materials for inspiration and found, among other ideas, campaign concepts built around love letters written from Converse to the cities of Los Angeles and Boston and Converse's successful 2015 "Made by You" campaign, which celebrated the consumers, their creativity, self-expression, and deep loyalty and love for Chuck Taylor shoes, a true Converse classic.  Converse's team ran with this idea of love for the brand and the exchange of love letters between Converse and athletes, entertainers, influencers, and consumers.  The Converse team workshopped the many ways in which the letters could be framed.  They ultimately determined that the letter should be framed as a communication with Chuck Taylor himself, the legendary man who personifies the Converse brand and whose signature is prominently featured on Converse's renowned All Star shoes.  Following months of development by members of the global brand marketing team, the "Love, Chuck" campaign was born.

4.  Converse launched its Love, Chuck campaign in February 2025, which featured advertisements using a combination of either "DEAR ___," with "LOVE, Chuck" or "DEAR Chuck," with "LOVE, ___", with imagery or short dialogue in the body of the advertisement (hereafter the "Love, Chuck campaign").  A representative advertisement that appeared in

---

[1] *See* https://clios.com/press-article/media-post-wk-nike-win-this-years-super-clio/ (accessed Nov. 12, 2025).
[2] *See* https://www.oneclub.org/awards/theoneshow/-adtitle/Winning+Isn't+for+Everyone/2025/all/all (accessed Nov. 12, 2025).

commerce as part of the Love, Chuck campaign is embedded below:[3]



5.      Around the same time that the Love, Chuck campaign launched, distinct teams at Nike were preparing for promotional activity surrounding Super Bowl LIX.  As is often the case, several Nike and Jordan brand sponsored athletes were competing in the playoffs to reach the February 9, 2025 Super Bowl, including Philadelphia Eagles superstar quarterback and Jordan athlete, Jalen Hurts.  When the Eagles won the NFC Championship game, members of Nike's Jordan global brand team began work on campaigns that could run if Mr. Hurts and the Eagles were victorious.  Members of Nike's global brand team, with no involvement from any Converse employee or any consideration of Converse's Love, Chuck campaign, developed a campaign for Mr. Hurts that would celebrate both the athlete himself and the city he represents.  The Jordan team landed on use of the phrase "LOVE, HURTS." which doubles as a phrase signifying overcoming adversity and a tribute to Philadelphia, the City of Brotherly Love.  This was not the first time Nike utilized elements of a love letter in its marketing materials, as evidenced by its 2020 "Flight Ball" global football campaign which opened with the "Dear World," salutation and concluded with the "Love, Football" closing.[4]

---

[3] *See* https://www.converse.com/c/love-chuck (accessed Nov. 12, 2025).
[4] *See* https://www.instagram.com/p/CCAoQeUJ_sL/?hl=en;
https://x.com/nikefootball/status/1285227384208101376 (accessed Nov. 12, 2025).

6.      After the Philadelphia Eagles won Super Bowl LIX and Mr. Hurts was recognized as the MVP of Super Bowl LIX, Nike launched the "Love, Hurts." marketing campaign to celebrate Mr. Hurts' victory and the MVP award (hereafter the "Love, Hurts. campaign").  A representative advertisement that appeared in commerce as part of the Love, Hurts. campaign is embedded below:[5]



7.      Nike's Love, Hurts. campaign appeared nationally and was prominently featured at the Super Bowl parade in Philadelphia.  The campaign ended up being so successful that, in response to consumer demand, Nike later released a line of sweatshirts and tee-shirts bearing the text "LOVE, HURTS."

8.      The success of Plaintiffs' campaigns apparently caught the attention of Defendant, a mistaken opportunist who sought to garner attention for its brand by accusing Plaintiffs on social media of stealing its purported LOVE, KELLY and DEAR LOVE, trademarks to create their successful campaigns.  Defendant does not own any trademark registrations for  LOVE, KELLY and DEAR LOVE,.  Indeed, on August 29, 2025, Defendant for the first time filed federal applications to register LOVE, KELLY and DEAR LOVE, as trademarks, apparently to gear up to

---

[5]*See*        https://www.soleretriever.com/news/articles/jordan-brand-jalen-hurts-super-bowl-59-victory-advertisement-love-hurts (accessed Nov. 12, 2025).

sue Converse and Nike and monetize its purported marks by asserting claims of willful trademark infringement and threatening to sue if Converse and Nike do not immediately halt their successful campaigns and pay Defendant vast sums of money. *See* **Exhibits A & B**. Defendant's allegations are false, and its legal claims are meritless.

9.     Defendant is a small multimedia company that has been designing apparel bearing the terms "Love, Kelly," and "Dear Love," among other ventures, since March 2023. In February 2024, following its first fashion show in New York City, Defendant's principal connected with a New York-based Converse employee from its Entertainment Marketing team—a small team which maintains relationships with musical artists, fashion designers, and other influencers, but does not work on Converse's global marketing campaigns. Defendant worked with this one Converse employee and a handful of other employees to stage its next fashion show at Converse's (now former) flagship retail store in New York City's SoHo neighborhood in September 2024. Converse gave Defendant this valuable space for free and also gave Defendant free Converse shoes for the models to wear during the show. While this fashion show was a success for Defendant, Converse and Defendant have not worked together on any other projects since.

10.     Defendant, via a social media campaign and a demand letter from its lawyer, has taken issue with Plaintiffs' respective uses of the terms "DEAR ___," and/or "LOVE, ___" two of the most commonly used terms used in written communications in the English language, and on that basis has demanded that Plaintiffs cease their marketing campaigns and pay Defendant vast sums of money. Defendant not only takes issue with Plaintiffs' use of the terms "DEAR ___," and/or "LOVE, ___" but casts doubt on Plaintiffs' marketing teams' reputation by claiming that they "stole" and "misappropriated" Defendant's "proprietary branding concepts" to create their respective marketing campaigns.

11.     Defendant is wrong.  As discussed herein and as will be further established in this action, Plaintiffs independently created the "Love, Chuck" and "Love, Hurts." marketing campaigns and did not steal or misappropriate Defendant's purported trademarks, "proprietary branding concepts," or any other intellectual property rights.  The few Converse employees that interacted with Defendant were supportive of Defendant's creative venture.  But those few Converse employees did ***not*** work on the Converse "Love, Chuck" campaign or the Nike "Love, Hurts." campaign and they did ***not*** take anything from Defendant.

12.     Defendant's use of the terms "Dear Love," and "Love, Kelly" cannot bar Plaintiffs from using the commonplace terms "DEAR ___," and "LOVE, ___" simply because Defendant claims those common terms as trademarks.  In fact, the concept of connecting with consumers in the form of a love letter is not new.  Defendant and Plaintiffs are not the first, and likely will not be the last, to utilize this foundational concept.  Defendant's principal himself has referred to this as a "love letter branding trend."  What Plaintiffs built with this concept, however, is what makes Plaintiffs unique and some of the best marketers in the world.  Converse built a campaign that ties directly to the brand's roots and makes consumers reconnect personally with the brand.  Nike's Jordan brand built a campaign that honored the tremendous career of a world-class athlete, his MVP Super Bowl LIX performance, and personally connected with the city of Philadelphia with only two words.  Defendant nor its purported trademarks were needed or used in any way to create these independently developed and successful campaigns.

13.     Finally, Defendant's willful trademark infringement claim fails because Defendant does not own legally protectable trademarks and, even if it did, Plaintiffs' "Love, Chuck" and "Love, Hurts." marketing campaigns are not likely to cause consumer confusion with Defendant's use of its purported LOVE, KELLY and DEAR LOVE, trademarks.  Plaintiffs therefore seek a

prompt judicial declaration of their rights so that they may be free of Defendant's flawed claims and public threats, which constitute a live controversy that this Court can adjudicate.

## THE PARTIES

14.     Nike, Inc. is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

15.     Converse Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at One Lovejoy Wharf, Boston, Massachusetts 02114.

16.     Converse Inc. is a wholly-owned subsidiary of Nike, Inc.

17.     On information and belief, Love, Kelly Holdings LLC is a limited liability company organized and existing under the laws of Vermont, with its principal place of business in Burlington, Vermont.

18.     On information and belief, Kelly Butts-Spirito is the sole member and manager of Love, Kelly Holdings LLC.

## JURISDICTION AND VENUE

19.     An actual controversy between the parties exists within the Court's jurisdiction as to Defendant's claims of willful trademark infringement.  The Court is authorized to declare the rights of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

20.     This Court has subject matter jurisdiction over this action, which involves claims of willful trademark infringement, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

21.     This Court has personal jurisdiction over Defendant because Defendant has continuously and systematically transacted business and supplied goods and/or services in this judicial district, including goods and services that use the "Love, Kelly" and "Dear Love," terms at issue in this action that Defendant claims are its trademarks.  On information and belief, Defendant sells, advertises, markets and promotes its goods and services in New York City, and has sold, advertised, marketed, and promoted its goods and services in New York City since at least as early as May 2022.  Defendant has organized and staged at least three fashion shows promoting its goods and services in New York City, including at the then-existing Converse store in SoHo.  For these reasons and others, Defendant has purposefully availed itself of the benefit of doing business in this State and judicial district such that maintenance of this action in this judicial district would not violate due process.  Moreover, this Court has personal jurisdiction over Defendant because a substantial part of the events or omissions giving rise to Plaintiffs' claims herein occurred in this judicial district.

22.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district, and Defendant is subject to personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

### A.    Converse's Business

23.     Converse is a global lifestyle and sport brand of and for creators engaged in the design, distribution, and sale of footwear, apparel, and accessories.  Converse's footwear and apparel bear the Converse, Chuck Taylor, All Star, One Star, Star Chevron, and Jack Purcell trademarks, and are among the most recognizable athletic and lifestyle products in the world.

24.    Converse regularly conducts successful marketing campaigns across various social media platforms, including Facebook, Twitter, YouTube, Instagram, TikTok, and Snapchat, to further promote Converse's brand and products.

25.    Converse regularly collaborates with well-known creators, entertainers, and/or professional athletes.  Converse's partners often appear in Converse's marketing campaigns and at Converse-sponsored events.

26.    The Chuck Taylor All Star is one of the most popular and storied shoes of all time, introduced in 1917 as the world's first performance basketball shoe.  To date, more than one billion pairs have been sold.  Its cultural, fashion, and historical impact is unmatched; the shoe is recognized as a symbol across multiple generations and subcultures, from basketball legends to rock bands and artists.  The shoe's namesake, Chuck Taylor, nicknamed "Mr. Basketball," evangelized the sport of basketball for nearly a half-century, bringing the ideals of originality, creativity, and self-expression to the world through his eyes.  Chuck Taylor's name and signature were added to the original canvas and rubber classic Converse All Star shoe in 1934.  Images of the Converse All Star shoe and the Chuck Taylor signature that appears on the shoe are embedded below:[6]

---

[6]    *See*    https://www.converse.com/shop/p/chuck-taylor-all-star-canvas-unisex-high-top-shoe/M9006MP.html?dwvar_M9006MP_color=optical%20white&dwvar_M9160_width=standard (accessed Nov. 12, 2025).




**B.    Nike's Business**

27.    Nike's principal business activity is the design, development, and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

28.    As a result of decades of Nike's advertising, promotional, and marketing efforts, Nike has established itself as a global multibillion-dollar brand and the world's leading designer, marketer, and distributor of athletic footwear and apparel products which are sold in connection with Nike's famous trademarks. Nike regularly conducts successful marketing campaigns across various social media platforms, including Facebook, Twitter, YouTube, Instagram, TikTok, and Snapchat, to further promote Nike's products, services, brands, and trademarks.

29.    Nike sponsors and/or collaborates with many professional athletes, teams, countries, clubs and leagues around the world. Those sponsorships and/or collaborations often result in Nike releasing marketing campaigns or launching product lines that are tailored to the athlete.

**C.    Defendant's Business**

30.    On information and belief, Defendant is a multimedia company focused on a few states in the Northeast corner of the United States that designs, distributes, and sells apparel, offers video production services, and organizes events. Defendant uses two terms relevant to this action

that it claims as trademarks LOVE, KELLY and DEAR LOVE, in connection with offering certain goods and services in Vermont and New York.

31.     On information and belief, Defendant's founder and owner, Mr. Butts-Spirito, moved from Vermont to New York City in or around May 2022 and he expanded Defendant's business operations to New York City at that time.

32.     On information and belief, Mr. Butts-Spirito, is a creative director, clothing designer, and event curator.

33.     Based on its pending trademark applications, Defendant claims it first used the terms LOVE, KELLY and/or DEAR LOVE, as trademarks in connection with apparel and retail apparel services in or around March 31, 2023.

34.     Defendant designed and directed a fashion show in collaboration with the VFILES Foundation on September 12, 2023 and sold apparel at the VFILES store in New York City in connection with that event.  The "Love, Kelly" and "Dear Love," terms appeared on Defendant's apparel at the VFILES fashion show in varying and inconsistent fonts and styles.  Representative images of Defendant's apparel products as featured at the VFILES fashion show are embedded below:[7]

---

[7] *See* https://lovekelly.com/pages/2023-love-kelly-fashion-show (accessed Nov. 12, 2025).






## D.    Defendant's Interactions with Converse

35.    On or around February 14, 2024, Mr. Butts-Spirito met Jason Thome, Manager, Entertainment Marketing, Global at Converse, at a VFILES event in New York City.  Mr. Thome's role at Converse includes, among other things, initiating and maintaining relationships with musical artists, fashion designers, and underground influencer circles and culture in and around New York City.  Notably, Mr. Thome is not involved in the creation or development of Converse's marketing campaigns.  Mr. Thome and Mr. Butts-Spirito communicated sporadically over the

course of the next three months about potential ways Defendant might collaborate with Converse.

36.     On information and belief, starting in June 2024, Mr. Thome and Mr. Butts-Spirito discussed Defendant staging a fashion show at the same time as New York Fashion Week.  These discussions led to Converse permitting Defendant to host a fashion show at no cost to Defendant at Converse's flagship retail store located at 560 Broadway, New York, NY 10012, and that Converse would provide shoes at no cost to Defendant for the models to wear in the show.  Leading up to the show, Defendant worked with certain Converse employees, including Mr. Thome, at its New York store to design the show and plan logistics.  Mr. Thome and Mr. Butts-Spirito discussed using Converse's tools at the store to embroider "Love, Kelly" on the Converse shoes worn by the show's models.  Converse later provided these embroidered Converse shoes at no cost to Defendant for Defendant's models to wear at the show.  Defendant's fashion show was held at Converse's flagship retail store on or around September 9, 2024.  On information and belief, Mr. Butts-Spirito considered the show a success.

37.     The "Love, Kelly" and "Dear Love," terms appeared on Defendant's apparel at the September 9, 2024 fashion show in different fonts and styles, and often in the form of initials "LK."   Representative images of Defendant's apparel products as featured at this show are embedded below:[8]

---

[8] *See* https://lovekelly.com/pages/love-kelly-x-converse-fashion-show (accessed Nov. 12, 2025).

 

  

38.     Following this fashion show, Mr. Butts-Spirito and Mr. Thome have kept in touch, but Converse has not worked with or collaborated with Defendant since.

**E.     Converse's Love, Chuck Campaign**

39.     In late 2024, Converse employees at its Boston headquarters began development of the marketing campaign that would become the Love, Chuck campaign.  Converse was looking for a way to develop an emotional connection with its consumers and specifically sought to bring out consumers' connection to Chuck Taylor, whose personal signature is a foundation of Converse's brand and featured on every Converse Chuck Taylor All Star shoe.

40.     The ideation, creation, and development of the Love, Chuck campaign took into

account several of Converse's previous marketing materials and/or campaigns. The primary inspiration for the Love, Chuck campaign was a love letter to Los Angeles from the Converse brand, which the North America marketing team had previously drafted. Converse additionally referenced its previous "Yours Truly, Chuck Taylor" campaign which launched in 2011 and its "Made By You" campaign which launched in or around 2015 and included a love letter to Boston from the Converse brand. Converse sought to expand on this idea of writing a love letter to a city and developed the Love, Chuck campaign for many months before it was launched.

41.     The Converse employees who were responsible for ideating, creating, and developing the Love, Chuck campaign had no contact with Defendant at any time and had no involvement in the design, planning, or execution of Defendant's September 9, 2024 fashion show at Converse's flagship retail store in New York. Additionally, neither Mr. Thome nor any other Converse employee that interacted directly with Defendant or worked with Defendant to design, plan, and stage the September 9, 2024 fashion show was involved in the ideation, creation, or development, of the Love, Chuck campaign.

42.     Converse launched its Love, Chuck campaign in February 2025. The premise of the Love, Chuck campaign is to structure advertisements using the classic salutation ("Dear") and closing ("Love") of a love letter, with Chuck Taylor being either the sender or the recipient, and with the body of the letter featuring powerful imagery and/or simple dialogue.

43.     Converse launched a video advertisement in connection with the Love, Chuck campaign's release.[9] Additional representative advertisements that have appeared in commerce as

---

[9] *See* https://www.youtube.com/watch?v=64-2TH1jByc (accessed Nov. 12, 2025).

part of the Love, Chuck campaign are embedded below:[10]



44.    The "Chuck" signature as used in the Love, Chuck campaign is Chuck Taylor's actual signature.

45.    The font used in the Love, Chuck campaign for words other than Chuck Taylor's signature is primarily the Converse official brand font, Mono45.

## F.    Nike's Love, Hurts. Campaign

46.    Nike regularly develops marketing campaigns to elevate its sponsored athletes who are winning championships and are recognized for superb performances.

47.    Philadelphia Eagles quarterback Jalen Hurts is a Jordan brand sponsored athlete.

48.    In or around early February 2025, Nike developed a marketing campaign that would run if the Philadelphia Eagles (and Mr. Hurts) won Super Bowl LIX.

---

[10] *See* https://www.billboard.com/culture/product-recommendations/tyler-the-creator-converse-love-chuck-campaign-1235909777/; https://www.instagram.com/p/DGWf6iUyGxl/ (accessed Nov. 12, 2025).

49.     Nike launched the Love, Hurts. campaign after the Philadelphia Eagles won Super Bowl LIX and Mr. Hurts won the MVP award.  The concept for "LOVE, HURTS." was in part inspired by Mr. Hurts' career and story of resiliency and overcoming adversity.  Despite facing significant obstacles, Mr. Hurts triumphed in his collegiate career and was ultimately drafted in the second round of the NFL Draft as a back up quarterback for the Philadelphia Eagles.  Mr. Hurts soon became the starting quarterback of the Eagles and led the team to a string of successful seasons, culminating in their Super Bowl LIX win and Mr. Hurts' MVP performance.  Mr. Hurts is now one of the top quarterbacks in the NFL.

50.     The "LOVE, HURTS." concept was also inspired by the fact that Philadelphia is known as the City of Brotherly Love and is home to the famous LOVE statute.  Additionally, the Super Bowl parade would happen in Philadelphia on Valentine's Day which is a day prominently associated with love.

51.     The Nike employees who were responsible for ideating, creating, and developing the Love, Hurts. campaign had no knowledge of Defendant or its purported trademarks, no contact with Defendant, and no involvement in Defendant's fashion show at the Converse store in New York.  Additionally, no Converse employees were involved in the creation or development of the Love, Hurts. campaign.  Nike's Love, Hurts. campaign is not connected in any way to Converse's Love, Chuck campaign.

52.     As used in the Love, Hurts. campaign, the text "LOVE, HURTS." is always accompanied by the Jordan brand's famous Jumpman design mark.  Also, the text "LOVE, HURTS." always appears in the same block letter font.

17

53.    The Love, Hurts. campaign resulted in a television advertisement[11] that aired nationally after the Eagles and Mr. Hurts won the Super Bowl, as well as several print advertisements that appeared online and around the city of Philadelphia.  Additionally, a hoodie was designed for Mr. Hurts with the text "LOVE, HURTS." which he wore to the Super Bowl parade.  Nike later released a line of hoodies and tee-shirts featuring the text "LOVE, HURTS." to the general public.  A representative product[12] that has been sold in commerce as part of the Love, Hurts. campaign is embedded below:



## G.    Defendant Wrongly Accuses Converse and Nike of Stealing its Brand and Threatens Claims of Willful Trademark Infringement

54.    On information and belief, Mr. Butts-Spirito saw advertisements from the Love, Chuck campaign on posters in New York.

55.    In or around late February 2025, Mr. Butts-Spirito initiated a phone call with Mr. Thome on the premise of discussing exciting things that were on the horizon for Defendant.

---

[11] *See* https://www.youtube.com/watch?v=vGnDZdNaETI&t=1s (accessed Nov. 12, 2025).
[12] *See* https://www.nike.com/t/jalen-hurts-mens-t-shirt-DEk5KjfD (accessed Nov. 12, 2025).

However, Mr. Butts-Spirito invited a third-party to the call, who claimed to be his associate, and used the call to berate Mr. Thome and accuse Converse of stealing Defendant's brand identity and/or intellectual property with its Love, Chuck campaign.  Mr. Thome directed Mr. Butts-Spirito and his associate to Converse's legal counsel and ended the phone call.

56.     Defendant did not reach out to Converse's legal counsel after the call.  Rather, Defendant, through Mr. Butts-Spirito, launched a multi-faceted social media campaign accusing Converse of stealing Defendant's intellectual property and infringing its purported LOVE, KELLY and DEAR LOVE, trademarks.  This included an Instagram post[13] and an approximately five-minute long video[14] wherein Defendant claimed that Converse "ripped off [his] brand" with its Love, Chuck campaign.  These claims were amplified by multiple follow-up posts on Mr. Butts-Spirito's other social media channels, including smaller down segments of the original accusatory video that were re-posted on social media sites like Instagram and Tik Tok.  Mr. Butts-Spirito also posted a number of Instagram "stories" during that time which reiterated the allegations against Converse.  A representative example is embedded below:[15]

---

[13] *See* https://www.instagram.com/p/DK5HM6Uxrav/?img_index=18 (accessed Nov. 12, 2025).
[14] *See* https://www.youtube.com/watch?v=bj3IHROwcIM (accessed Nov. 12, 2025).
[15] *See* @itslovekelly, Instagram, https://www.instagram.com/itslovekelly/ (story captured July 8, 2025).



57.    Defendant's social media campaign evolved to include claims that Nike had infringed Defendant's brand identity and/or intellectual property rights with its Love, Hurts. campaign.   A representative example of a story posted on Defendant's Instagram account is embedded below:[16]

---

[16] *See* @itslovekelly, Instagram, https://www.instagram.com/itslovekelly/ (story captured Sept. 8, 2025).



58.     Defendant, through Mr. Butts-Spirito, also commented directly on Nike's and Converse's social media posts to assert his accusations.  A representative example is embedded below:[17]

---

[17] *See* https://www.instagram.com/p/DORrLmcET8O/?img_index=1 (accessed Nov. 12, 2025).



59.    Many of Defendant's social media posts included a call to action for its followers to comment on Plaintiffs' social media.  Defendant's claim of "theft" with no attempt to investigate the truth has begun to have its desired effect.  Defendant's social media followers have trolled Plaintiffs' social media postings, making statements like "justice for love, Kelly" and "this is stolen from @itslovekelly."  Representative examples are embedded below:[18]

---

[18] *See* https://www.instagram.com/p/DLGHj3URHlO/?img_index=1 (accessed Nov. 12, 2025); *see also* https://www.instagram.com/p/DOWx1OtEWXT/ (accessed Nov. 12, 2025).





60.     Incredibly, Defendant's demand to Plaintiffs cast comments such as these as "confusion."  *See* **Exhibit B**.

61.     On information and belief, Defendant then engaged an attorney, Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., to file applications to register LOVE, KELLY and DEAR LOVE, as trademarks with the United States Patent and Trademark Office (USPTO) and to pursue claims of willful trademark infringement against Converse and Nike.

62.     On August 29, 2025, Defendant filed an application with the USPTO to register LOVE, KELLY as a trademark (U.S. Serial No. 99365548) in International Classes 25 and 35 for clothing, online retail clothing services, video production services, and event organization services. This is a standard word mark without claim to any particular font style, size, or color.  This application is awaiting assignment to an examining attorney.

63.     On August 29, 2025, Defendant filed an application with the USPTO to register DEAR LOVE, as a trademark (U.S. Serial No. 99365556) in International Classes 25 and 35 for clothing and online retail clothing services.  This is a standard word mark without claim to any particular font style, size, or color.  This application is awaiting assignment to an examining attorney.

64.     On September 30, 2025, Defendant, through its counsel Mr. Skale, sent Converse and Nike a demand letter claiming that the Love, Chuck and Love, Hurts. campaigns willfully infringe Defendant's purported trademark rights.  Defendant claims that Converse and Nike make unauthorized use of its purported LOVE, KELLY and/or DEAR LOVE, trademarks in a way that is confusingly similar to Defendant's use of its purported marks, and that such use constitutes trademark infringement under the Lanham Act.  Defendant further claimed that Plaintiffs are liable for willful trademark infringement because they "blatantly stole and misappropriated" Defendant's proprietary branding concepts that were shared with Converse during the 2024 fashion show

collaboration.  Defendant stated that it was prepared to initiate a lawsuit unless Plaintiffs met several demands, including stopping their respective marketing campaigns and paying money damages.  *See* **Exhibit A**.

65.    On November 3, 2025, following a discussion with Plaintiffs' in-house counsel, Defendant, through its counsel, communicated a new demand: an initial payment of an astounding $9.6 million, ongoing royalties of 6% on all future revenue from the Love, Chuck and Love, Hurts. campaigns (or, in the alternative, Plaintiffs cease use of those campaigns), and/or a formal collaboration with Nike.  *See* **Exhibit B.**  Apparently, Defendant plans to take the untenable position that a significant percentage of sales from two of the world's most iconic brands is attributable to Defendant's use of the purported LOVE, KELLY and DEAR LOVE, trademarks and Plaintiffs' supposed infringement of those purported marks.  Plaintiffs will not bend to this baseless demand and thus had no choice but to file this action.

## H.    Defendant Does Not Own Legally Protectable Rights in its Purported Trademarks

66.    Defendant does not own federal trademark registrations for the purported LOVE, KELLY and DEAR LOVE, trademarks and Defendant's demand letter does not claim that it owns any such registrations.

67.    Instead, Defendant's assertions of trademark ownership in its demand letter appear to be based on purported common law trademark rights in LOVE, KELLY and DEAR LOVE, that, according to Defendant's trademark applications, were first used on March 31, 2023.  Defendant has no legally protectable rights in those terms for several reasons.

68.    First, Defendant's purported marks are conceptually weak because they use commonplace and generic words "Dear" and "Love".  These words are well-recognized and widely

used as the salutation ("Dear ___,") and closing ("Love, ___") of a love letter.  In fact, "Dear ___," is a salutation used in all types of written correspondence, not just love letters.  "Love, ___" is likewise used in different types of correspondence and typically signifies that the sender has some level of fondness for the recipient.  The purported marks are not inherently distinctive because the words "Dear" and "Love" do not convey any message except that the communication is directed to the person whose name follows "Dear ___," and sent from the person whose name follows "Love, ___".

69.     Mr. Butts-Spirito himself acknowledged this lack of distinctiveness in an Instagram post about an advertisement for The Kardashians television show that states "With love, The Kardashians," commenting "You can't tell me we didn't start this love letter branding trend that's everywhere this year."  By referring to his own use of the "Love, Kelly" and "Dear Love," terms as a "love letter branding trend," Mr. Butts-Spirito necessarily admits that those terms are not being used as source identifiers.  The self-described "trend" of using love letter salutations and closings in advertisements is merely a marketing strategy.  Mr. Butts-Spirito's post appears under the "Brand Influence" Story Highlight on Defendant's Instagram account, and, on information and belief, was posted on October 25, 2025.[19]

---

[19]     *See*     @itslovekelly,     Instagram,     "Brand     Influence"     Story     Highlights, https://www.instagram.com/itslovekelly/.



70.    Additionally, the thousands of other "LOVE" formative and "DEAR" formative marks in existence, as well as previous uses of those terms in advertising campaigns, further evidence the conceptual weakness of Defendant's purported marks.  Nike itself has previously used "Dear___," and "Love,___" in its marketing campaigns, including the 2020 "Flight Ball" global football campaign that used "Dear World," with "Love, Football," as shown below.[20] Defendant operates in a crowded field, and its conceptually weak marks fail to act as source identifiers for its business.

---

[20] *See* https://www.instagram.com/p/CCAoQeUJ_sL/ (accessed Nov. 12, 2025).



71.     Second, Defendant's purported marks are commercially weak because, on information and belief, Defendant has made only minimal use of the purported LOVE, KELLY and DEAR LOVE, marks in the marketplace.  Defendant has not been using these purported marks for a long period of time; indeed, it only began selling products under its purported LOVE, KELLY and DEAR LOVE, marks within the last two and a half years.   On information and belief, Defendant has made minimal sales of products bearing the purported LOVE, KELLY and DEAR LOVE, marks.  Additionally, on information and belief, Defendant has not spent significant sums of money to conduct its limited advertising on social media channels, and Defendant has not received a meaningful amount of unsolicited media coverage.   Lastly, Defendant's use of its purported LOVE, KELLY and DEAR LOVE, marks is not exclusive because it is just one of many users of "LOVE" formative and "DEAR" formative marks and of those terms in advertising campaigns in the marketplace.  This extensive third party use further suggests that consumers would not associate goods or services bearing the purported LOVE, KELLY and DEAR LOVE, marks with Defendant.

72.     Because Defendant's purported marks are conceptually and commercially weak, and because they have not acquired distinctiveness, they do not function to identify Defendant as

the source of its products and are therefore not legally protectable.

## I.    No Likelihood of Confusion

73.    Plaintiffs are not aware of any actual consumer confusion since they launched their marketing campaigns in February 2025.  Specifically, Plaintiffs are not aware of any consumers or prospective consumers of the parties' goods/services who believe Defendant is affiliated with or sponsored by Plaintiffs as a result of seeing Converse's Love, Chuck campaign and/or Nike's Love, Hurts. campaign, or are confused as to the source of the parties' services.  Plaintiffs are only aware of third parties that commented on their social media accounts in an apparent reaction to Defendant's accusatory social media posts and call to action to his followers.

74.    The lack of any meaningful actual confusion is likely due to many factors relevant to the infringement analysis, examples of which include: First, Plaintiffs' and Defendant's uses of the "DEAR ___," and "LOVE, ___" terms are distinctly dissimilar when viewed as they appear in the marketplace.  Second, the parties offer different goods and services.  Third, Plaintiffs had no bad faith intent when developing their marketing campaigns.  Defendant's claim that its limited interaction with a few Converse employees to stage a fashion show in Converse's flagship retail store in New York City somehow led to a company-wide scheme to steal its brand for a global advertising campaign is unfounded and incorrect.

75.    Plaintiffs are not liable for trademark infringement resulting from the Love, Chuck campaign or the Love, Hurts. campaign, given that Plaintiffs' uses of "DEAR ____," "LOVE, ___" and "LOVE, HURTS." are not likely to cause confusion with Defendant's use of its purported LOVE, KELLY or DEAR LOVE, marks.

76.    Defendant's threats, as set forth in its lawyer's demand letter and email to Plaintiffs,

plus its extensive allegations on social media, have created a reasonable apprehension of litigation, placed the parties in adversarial conflict with each other, and generated public condemnation over Plaintiffs' respective marketing campaign.

77.     Plaintiffs desire to promptly resolve this adversarial conflict and establish that they are not infringing Defendant's rights, if any, or unfairly competing with Defendant.  These circumstances have created a substantial controversy between the parties of sufficient immediacy to warrant the issuance of a declaratory judgment.

## FIRST CAUSE OF ACTION
### Seeking a Declaration of No Trademark Infringement

78.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 – 77 above as if set forth herein.

79.     A real and actual controversy exists between Plaintiffs and Defendant with respect to whether Converse's Love, Chuck campaign or Nike's Love, Hurts. campaign and apparel infringe Defendant's claimed common law rights in its purported LOVE, KELLY or DEAR LOVE. marks.

80.     Defendant does not have a protectible trademark ownership interest in LOVE, KELLY or DEAR LOVE, nor exclusive rights to use the terms "DEAR ___," and "LOVE, ___" in the marketplace.

81.     Neither Converse's use of "DEAR ___," and "LOVE, ___", including but not limited to its Love, Chuck campaign, nor Nike's use of "LOVE,___", including but not limited to its use of "LOVE, HURTS." in its Love, Hurts. campaign and apparel, is likely to cause confusion or cause mistake or deceive the relevant public with respect to the source or origin of the parties'

goods and/or services.

82.     As a result, Converse's use of "DEAR ___," and "LOVE, ___", including but not limited to its Love, Chuck campaign, and Nike's use of "LOVE, ___", including but not limited to its use of "LOVE, HURTS." in its Love, Hurts. campaign and apparel, do not infringe any rights of Defendant under any provisions of the Lanham Act including 15 U.S.C. §1114 and 1125(a) or any state statute or common law, including Defendant's purported rights in the LOVE, KELLY and DEAR LOVE, trademarks.

## SECOND CAUSE OF ACTION
### Seeking a Declaration of No Common Law Trademark Rights

83.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 – 82 above as if set forth herein.

84.     A real and actual controversy exists between Plaintiffs and Defendant with respect to whether Defendant owns common law trademark rights in the purported DEAR LOVE, and LOVE, KELLY marks.

85.     Defendant does not own trademark registrations for the purported DEAR LOVE, and LOVE, KELLY trademarks and therefore has threatened Plaintiffs pursuant to unregistered common law trademark rights in those purported marks.

86.     Defendant has made minimal sales of products bearing the purported LOVE, KELLY and DEAR LOVE, marks.  Additionally, Defendant has not spent significant sums of money advertising the purported LOVE, KELLY and DEAR LOVE, marks, and Defendant has not received a meaningful amount of unsolicited media coverage for the purported LOVE, KELLY and DEAR LOVE, marks.  Lastly, Defendant's use of the purported LOVE, KELLY and DEAR LOVE, marks is not exclusive because it is just one of many users of "LOVE" formative and

"DEAR" formative marks and of those commonplace terms in advertising campaigns in the marketplace.

87.    Because Defendant's purported DEAR LOVE, and LOVE, KELLY trademarks are conceptually and commercially weak, and because they have not acquired distinctiveness, they do not function to identify Defendant as the source of its products.

88.    As a result, Defendant does not own common law trademark rights in DEAR LOVE, and LOVE, KELLY nor does it have exclusive rights to use the terms "DEAR ___," and "LOVE, ___" in the marketplace.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for a declaratory judgment that:

1.    Converse's use of "DEAR ___," and "LOVE, ___", including but not limited to its Love, Chuck campaign, is proper, lawful, and does not infringe and at all times has never infringed Defendant's asserted rights in the purported LOVE, KELLY and DEAR LOVE, trademarks.

2.    Nike's use of "LOVE, ___", including but not limited to its use of "LOVE, HURTS." in its Love, Hurts. campaign and apparel, is proper, lawful, and does not infringe and at all times has never infringed Defendant's asserted rights in the purported LOVE, KELLY and DEAR LOVE, trademarks.

3.    Defendant does not own common law trademark rights in DEAR LOVE, and

LOVE, KELLY nor does it have exclusive rights to use the terms "DEAR ___," and "LOVE, ___" in the marketplace.

      4.      Awarding Plaintiffs such other and additional relief as the Court deems just and proper.

Dated: November 14, 2025          */s/ Tamar Y. Duvdevani*

                        Tamar Y. Duvdevani
                        Marc E. Miller
                        Emily Radin

                        **DLA PIPER LLP (US)**
                        1251 Avenue of the Americas
                        27th Floor
                        New York, NY 10020-1104
                        tamar.duvdevani@us.dlapiper.com
                        marc.miller@us.dlapiper.com
                        emily.radin@us.dlapiper.com

                        *Attorneys for Plaintiffs Converse Inc., and Nike, Inc.*